IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CYNTHIA D. PIKE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:15CV411 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cynthia Pike ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on July 13, 2012 (protective filing date July 9, 2012), alleging a disability onset date of January 1, 2010. (Tr. at 18, 163-64.)[1] Plaintiff applied only for Disability Insurance Benefits, not Supplemental Security Income, and she had a Date Last Insured of June 30, 2010. Thus, she was required to establish an onset of disability prior to June 30, 2010. Her application was denied initially

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

and upon reconsideration. (Tr. at 64-88, 94-101.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 102-03.) Following the subsequent video hearing on September 11, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. at 18-27.) On April 1, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In this case, because Plaintiff only applied for Title II Disability Insurance Benefits, she was required to show that she suffered from a disability on or before June 30, 2010, her Date Last Insured ("DLI"). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ determined that Plaintiff suffered from the following combination of severe impairments during the relevant time period: chronic pain syndrome; cervical spondylosis; a history of migraine headaches; and a history of breast cancer, status post surgical intervention. (Tr. at 20.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 21-22.) Therefore, the ALJ assessed Plaintiff's RFC and determined that during the period from January 1, 2010 (the alleged onset date) through June 30, 2010 (the DLI), she

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant: could lift and/or carry 20 pounds occasionally and

5

10 pounds frequently; could stand and/or walk six hours and sit six hours in an eight-hour workday, with normal breaks; could push and/or pull consistent with the lifting limitations, but could only occasionally push and/or pull with the left upper extremity; could not climb ladders or scaffolds, but could occasionally climb ramps or stairs; could occasionally stoop, kneel, crouch, or crawl; could occasionally reach overhead with the left upper extremity; and could occasionally be exposed to operational control of moving machinery and unprotected heights. (Tr. at 22.)

At step four, the ALJ determined that Plaintiff's RFC did not preclude her past relevant work as a cashier. (Tr. at 25.) Alternatively, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 25-26.)

After the ALJ's decision was issued on January 2, 2014, Plaintiff appealed to the Appeals Council and submitted an additional opinion letter authored by her treating physician, Dr. Malone, on April 16, 2014. The Council made this evidence part of the record and expressly considered it in conjunction with the record as a whole in denying Plaintiff's request for review (see Tr. at 2, 5). In the present appeal, Plaintiff complains that the Appeals Council never assigned weight to Dr. Malone's opinion or described why, despite the inclusion of this evidence, Plaintiff's claim was not entitled to further review.

In considering this contention, the Court notes that in this case, the ALJ extensively considered the treatment records from Dr. Malone, first with respect to Plaintiff's insomnia and sciatica:

> [t]he claimant testified that she has difficulty falling asleep; wakes up frequently throughout the night due to pain; and gets only three to four hours of sleep during a typical night. While the claimant's alleged symptoms accurately represent her current sleep pattern, the medical evidence indicates she was sleeping adequately prior to and during the relevant period. In 2008 and 2009,

6

Case 1:15-cv-00411-LCB-JEP   Document 12   Filed 08/23/16   Page 6 of 13

the claimant reported that she was sleeping more than eight hours per night with no napping or somnolence during the day. On April 30, 2009, the claimant told Dr. Malone that she sleeps soundly through the night. The claimant made only one complaint about her sleep during the relevant period. On May 26, 2010, the claimant told Dr. Malone that her sleep is fair because it is interrupted by left shoulder pain, but she admitted that she goes to bed around 10:00 p.m. and is usually up by 7:00 a.m. Treatment notes during the relevant period fail to show prolonged periods with inadequate sleep, persistent drowsiness during the day, or any other symptoms that would support finding the claimant's insomnia caused work related limitations prior to June 30, 2010. Furthermore, Dr. Malone's treatment notes indicate the claimant experienced a brief episode of sciatica on the left side in May 2010, but it began improving quickly with little to no treatment. The claimant took her typical dose of Oxycontin for pain relief with no need for physical therapy other treatment. Overall, . . . these impairments did not cause work related limitations prior to the date last insured.

(Tr. at 20-21 (citations to exhibits omitted).) The ALJ also noted that with respect to Plaintiff's claim of three to four headaches per week, the treatment notes prior to and during the relevant period did not indicate that she reported headaches of such frequency or duration prior to June 30, 2010. (Tr. at 23.) The ALJ also noted that with respect to Plaintiff's neck and left arm pain:

> During the relevant period between January 1 and June 30, 2010, the claimant reported some neck and left arm pain, but Dr. Malone provided no specific medical restrictions. On April 30, 2009, Dr. Malone noted that the claimant had diminished fine motor skills in the left hand, but she maintained normal strength and sensation with no gross tremor or ataxia present. The claimant saw Dr. Malone only one time during the relevant period, on May 26, 2010, and he noted that the claimant's motor exam showed normal strength (5/5) and only trace antalgic weakness in the left shoulder; normal sensation; and no gross tremor or ataxia. Dr. Malone's treatment prior to and during the relevant period consisted of Oxycontin for all of her symptoms, including the migraine headaches. Dr. Malone did not refer the claimant for physical therapy, injections, pain management, or surgical consultation. Furthermore, the claimant's treatment regimen did not change until nearly a year after the date last insured, at which time her medication was changed to Opana with Oxycodone for only acute pain relief.

7

Case 1:15-cv-00411-LCB-JEP Document 12 Filed 08/23/16 Page 7 of 13

(Tr. at 23 (citations to exhibits omitted).) To the extent Plaintiff testified regarding her difficulties lifting, standing, walking and sitting, the ALJ noted that there was no medical evidence to support such limitations prior to June 30, 2010. (Tr. at 23.) Ultimately, the ALJ emphasized that "this case involves a Title II claim for benefits only and the medical evidence does not fully support all of the claimant's alleged symptoms prior to the date last insured on June 30, 2010. Dr. Malone's treatment notes from December 2012 and July 2013 suggest that the claimant's impairments are worsening, but there is no indication that the symptoms worsened prior to the date last insured." (Tr. at 24.)[4] The ALJ gave substantial weight to the treatment notes provided by Dr. Malone, and noted that "[a]lthough he chose not to provide an assessment as to the claimant's level of functioning during the relevant period, his treatment notes confirm the claimant's ongoing neck and shoulder pain was adequately treated with pain medication prior to the date last insured." (Id.)

In the subsequent April 2014 letter submitted to the Appeals Council, Dr. Malone noted that he had been following Plaintiff since 2003, and that she had been maintained on high dose narcotics "for several years" and "they are partially effective." Dr. Malone then summarized his treatment notes since 2010, describing the visits on May 24, 2010, November 12, 2010, June 6, 2012, December 13, 2012, July 5, 2013, and February 28, 2014. Dr. Malone then stated that:

> This patient is unable to work publicly due to 1) her persistent severe left neck, upper chest and left upper extremity pain, 2) continued need for very high dose narcotics for partial pain control and 3) mild left arm weakness. She also has persistent decreased fine motor skills in the left hand. She has limited vocational training and has worked in unskilled positions throughout her life. From my

---

[4] Consistent with this analysis, during the hearing in this case, Plaintiff testified that the issues with her neck and shoulders had gotten worse since June of 2010. (Tr. at 46.)

8

Case 1:15-cv-00411-LCB-JEP Document 12 Filed 08/23/16 Page 8 of 13

> standpoint, she should try to minimize her driving and should not work near dangerous machinery or at heights due to the need for her high dose narcotics whose major side effects can be somnolence, imbalance, and cognitive slowing. She would be unable to repetitiously use her left upper extremity even for light industrial work given the hyperpathia.

(Tr. at 337-38.) The Appeals Council considered this additional evidence and "considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record." The Appeals Council "found that this information does not provide a basis for changing the Administrative Law Judge's decision" and denied the request for review. (Tr. at 1-2.)

In evaluating the denial in this case, this Court must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record,'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Wilkins v. Sec., Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). However, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review," even when it rejects new, material evidence in doing so. Meyer, 662 F.3d at 705-706. In this regard, the Fourth Circuit has held that the "lack of such additional fact finding does not render judicial review 'impossible' -- as long as the record provides 'an adequate explanation of the Commissioner's decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth

Circuit has] reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.'" Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). Where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id. Thus, remand is appropriate if the Appeals Council accepts new evidence that is "conflicting" or "presents material competing testimony" or is "contradictory" or "calls into doubt any decision grounded in the prior medical reports." Gainforth v . Colvin, No. 2:15-CV-205, 2016 WL 3636840, at *7 (E.D. Va. May 9, 2016).

Here, despite Plaintiff's arguments to the contrary, the new evidence submitted by Dr. Malone does not create a "competing evidence" situation requiring remand under Meyer. In his 2014 letter, Dr. Malone identified Plaintiff's left extremity pain and weakness and her need for narcotic pain medication as the bases for his opinion that she "is unable to work publicly." (Tr. at 338.) He further posited that Plaintiff "should try to minimize her driving," "should not work near dangerous machinery or at heights," and "would be unable to repetitiously use her left upper extremity." (Id.) However, the ALJ's RFC assessment addressed Plaintiff's chronic neck and shoulder pain along with the side effects of her pain medications by limiting Plaintiff to light work with only occasional pushing, pulling, and overhead reaching with the left upper extremity; occasional climbing of ropes and stairs, occasional exposure to operational control of moving machinery and unprotected heights, and no climbing of ladders

or scaffolds. (Tr. at 22.) Plaintiff fails to suggest what, if any, greater restrictions should be included in light of the new evidence from Dr. Malone.[5]

Moreover, Dr. Malone's 2014 opinion describes Plaintiff's inability to work in the present tense, and fails to specify which of the limitations he identifies were present during the first half of 2010 – the time period at issue here - as opposed to later. (Tr. at 338.) The ALJ specifically noted in his decision that "Dr. Malone's treatment notes from December 2012 to July 2013 suggest that the claimant's impairments are worsening, but there is no indication the symptoms worsened prior to the date last insured." (Tr. at 24.) Because Dr. Malone's 2014 opinion contains no evidence to alter this conclusion, it fails to fill an "evidentiary gap," as Plaintiff suggests. Instead, Dr. Malone's 2014 letter essentially reiterates the findings in his treatment notes – which the ALJ assigned substantial weight - but in opinion form. Accordingly, the newly-submitted opinion fails to create a situation in which conflicting and supporting evidence in the record has yet to be weighed by a factfinder. See, e.g., Gainforth, 2016 WL 3636840, at *9 (E.D. Va. May 9, 2016) ("This Court, as the Court did in Meyer, can consider the post-hearing submission to determine whether this additional information affects the evaluation of whether the Commissioner's decision is supported by substantial evidence. . . . After considering the evidence of record, which includes the post-hearing submission, this Court finds that a sentence four remand would be improper because, just as the Court found in Smith, supra, despite the opinions contained in the post-hearing submission, substantial evidence supports the ALJ's decision that [the plaintiff] is not disabled."); Edgell v. Comm'r

---

[5] Notably, a physician's opinion regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act is never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d)(1). Accordingly, Dr. Malone's opinion that Plaintiff is unable to work does not, without more, constitute competing evidence.

11

of Soc. Sec., No. 3:14-CV-82, 2015 WL 3868478, at *7 (N.D.W. Va. June 23, 2015) ("[T]he Court can determine whether substantial evidence supports the ALJ's decision because, unlike Meyer, Dr. Chua's statement did not fill an 'evidentiary gap' that played a role in the ALJ's decision"); Turner v. Colvin, No. 0:14-CV-228-DNC, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015) ("In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, 'provides an adequate explanation of [the Commissioner's] decision.' . . . That is, a court should affirm the Commissioner's decision where it can conclude that it is supported by substantial evidence, and it should remand the case to the ALJ where, on consideration of the record as a whole, it cannot determine whether the ALJ's denial of benefits is supported by substantial evidence," and where a newly-submitted letter "repeats evidence already before the ALJ" and does not fill an "evidentiary gap," remand is not required).; Knott v. Colvin, No. 1:13CV332, 2014 WL 2453302 (M.D.N.C. June 2, 2014); Miller v. Colvin, No. 1:12-CV-371-GCM, 2014 WL 2208119 (W.D.N.C. May 28, 2014); Davis v. Astrue, No. C/A 5:11-405-JFA-KDW, 2012 WL 4479252 (D.S.C. Sept. 27, 2012). In this case, based on the explanation and analysis set out in the ALJ's decision, substantial evidence supports the Commissioner's determination even with the consideration of Dr. Malone's 2014 Letter, and remand is not required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #7] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #9] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 23rd day of August, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge